UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KELLY HAGAN, Chapter 7 Trustee,    )<br>                    Plaintiff,    )<br>                                   )    No. 1:15-cv-1103<br>-v-                                )<br>                                   )    Honorable Paul L. Maloney<br>PAMELA BAIRD,                      )<br>                    Defendant.    )<br>                                   ) | |

## OPINION AND ORDER AFFIRMING DECISION OF THE BANKRUPTY COURT

As a common practice, parties will plead legal claims in the alternative. This lawsuit demonstrates a potential problem with that practice. When a party prevails on one claim, the claims that are brought in the alternative are foreclosed. In this adversary proceeding in the bankruptcy court, the Trustee pled that a transfer of funds should be avoided as a fraudulent transfer.[1] Trustee also pled that the debtor, Pamela Baird, converted the funds which, under Michigan law, would entitled the estate to treble damages. Trustee prevailed on a motion for summary judgment on the fraudulent transfer theory. Trustee and Pamela Baird subsequently filed cross motions for summary judgment on the conversion claim. The Bankruptcy Court denied Trustee's motion and granted Pamela's motion, relying on facts that had been previously established in the resolution of the fraudulent transfer claim. The Court finds no errors in the reasoning of the Bankruptcy Court and affirms its decision.

---

[1]    James Boyd was initially identified as the Trustee in the initial adversary complaint. At some point during the litigation, Kelly Hagan was substituted as the Trustee.

I.

A brief history is necessary for context.[2] William Baird owned and operated King Par, a company that made and distributed golf-related products. Pamela Baird was married to William, but the two are now divorced. In 2002, Izzo Golf sued King Par for patent infringement, and ultimately prevailed. While the patent infringement lawsuit was still in progress, William Baird arranged to sell King Par's assets to KP Acquisition Company (KPAC) and, in 2009, executed an Asset Purchase Agreement (APA). William Baird directed KPAC to deposit approximately $4,000,000 into a joint personal bank account owned by William and Pamela at the Arvest Bank in Tulsa, Oklahoma. After KPAC sent the money to the Arvest account, King Par changed its name to B & P Baird Holdings (B & P).

Under the terms of the APA, King Par, now B & P, retained specifically enumerated assets, debts, and liabilities, which included the liabilities arising from the patent litigation involving Izzo Golf. In June 2010, a jury returned a verdict against King Par in favor of Izzo Golf for approximately $3,280,000. On September 7, 2010, Izzo Golf filed a second lawsuit, naming King Par, B & P, William Baird, Pamela Baird, and others. The next day, September 8, 2010, B & P filed for Chapter 7 bankruptcy protection in the Western District of Michigan. *In re B & P Baird Holdings, Inc.*, 10-10941 (Bankr. W.D. Mich.). B & P

---

[2] A more detailed background has been provided in opinions issued by several courts. *See Hagan v. Baird (In re B & P Baird Holdings)*, 591 F. App'x 434 (6th Cir. 2015); *Hagan v. Baird (In re B & P Baird Holdings)*, No. 11-80397, 2015 WL 6152959 (Bankr. W. D. Mich. Oct. 15, 2015); *Izzo Golf, Inc. v. King Par Corp.*, No. 10-cv-6507, 2016 WL 7104223 (W.D.N.Y. Dec. 6, 2016); *Izzo Golf, Inc. v. King Par Golf Inc.*, No. 02-cv-6012, 2007 WL 1987789 (W.D.N.Y. July 5, 2007).

identified six unsecured creditors, including Izzo Golf, with claims against B & P totaling more than $3,600,000.

On August 23, 2011, an adversary proceeding was commenced against King Par, William Baird, and Pamela Baird. Among the claims advanced in the amended complaint filed in January 2012, Trustee alleged that the transfers of funds into the Arvest account were fraudulent under the Bankruptcy Code and under Michigan law. Trustee also asserted that the transfers constituted common law conversion and conversion under the Michigan statute.

Pamela Baird filed a motion to dismiss the two conversion claims brought against her. The bankruptcy court granted Pamela's motion in March 2012. Trustee then filed a motion to amend the complaint to overcome the pleading deficiencies, which was denied. Trustee appealed, first to this district court and then to the Sixth Circuit. The Sixth Circuit found that Trustee had adequately pled the conversion claims and rejected the defense on which the bankruptcy court relied to deny leave to amend the complaint.

Meanwhile, Trustee filed a motion for partial summary judgment. On August 8, 2012, the bankruptcy court granted Trustee's motion as to the fraudulent transfer claims. The bankruptcy court concluded that the transfers from King Par to the Baird's Arvest account in June 2009 constituted fraudulent transfers under § 548(a)(1)(B) and left King Par with an unreasonably small capital reserve. (ECF No. 2-10 Hrg. Trans. at 64 PageID.1190.) The remedy provided by the Bankruptcy Court was avoidance of the transfers. (*Id.* at 66 PageID.1192.) The Bankruptcy Court acknowledged that Trustee reserved the right to bring an action for recovery of the transfers that were now voided. (*Id.*)

After these motions and appeals, the only claims that remained in the adversary proceeding were the conversion claims against Pamela Baird. The Bankruptcy Court's resolution of the fraudulent transfer claims was not appealed and the parties settled all of the claims, except for the conversion claims against Pamela Baird.

After remand from the Sixth Circuit, Trustee filed an amended complaint asserting the conversion claims. Trustee and Pamela Baird filed cross motions for summary judgment. The Bankruptcy Court granted Pamela Baird's motion and denied Trustee's motion. Trustee then filed this appeal.

## II.

Because a decision to grant summary judgment is a question of law, a district court reviews the bankruptcy court's grant of summary judgment under the *de novo* standard. *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001); *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1); *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 248).

III.

A.

The Court begins with a review of Michigan's law of conversion. In Michigan, common-law conversion occurs with "any 'distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dep't of Agric. v. Appletree Mtkg., LLC*, 779 N.W.2d 237, 244 (Mich. 2010) (citation omitted) (collecting cases); *see Aroma Wines & Equip, Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 141 (Mich. 2015) (same). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Appletree Mktg.*, 779 N.W.2d at 244–44 (citations omitted). "Conversion is an intentional act in that the defendant's action must be willful, but one can commit the tort unwillingly if unaware of the plaintiff's outstanding property interest." *Citizens Ins. Co. of America v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989).

In addition to a cause of action under common law, Michigan has a statutory provision defining conversion.

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> > (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> >
> > (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person is buying, receiving, possessing, concealing, or aiding in the concealment, of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section in addition to any other right or remedy the person may have at law or otherwise.

Mich. Comp. Laws § 600.2919a.

For conversion of money to occur, the defendant must have an obligation to return the specific money entrusted to his or her care, and the defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship. *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999); *Citizens Ins. Co.*, 444 N.W.2d at 575; *see Lawsuit Fin., LLC v. Curry*, 683 N.W.2d 233, 241 (Mich. Ct. App. 2004) (per curiam) (finding that the complaint failed to state a claim for conversion because the plaintiff did not allege that the defendant obtained litigation proceeds without consent). Examining Michigan law, the Sixth Circuit explained that the conversion tort requires the plaintiff to have "a property interest to distinguish it from a contractual obligation, which will not support a conversion claim by itself." *In re Schwartz*, 622 F. App'x 485, 491 (6th Cir. 2015). Following these principles, in Michigan a conversion claim can lie

for overpayments when an individual cashes a check and retains the full amount while only entitled to a portion of the total. *See Citizens Ins. Co.*, 444 N.W.2d at 576.

B.

The Bankruptcy Court issued its Opinion on the conversion claims on October 15, 2015. (ECF No. 2-2 Conversion Opinion PageID.67–86.) Here, the Court briefly summarizes the Bankruptcy Court's findings and reasoning.

According to the Bankruptcy Court, Trustee made two important concessions at the hearing. The record contains no evidence that Pamela was involved in the sale of King Par's assets or the decision to transfer the proceeds to the Arvest account. (*Id.* PageID.74.) And, the record contains no evidence to support the conclusion that either Pamela or William Baird embezzled the proceeds. (*Id.* PageID.75.) Neither of these concessions are challenged in this appeal.

The Bankruptcy Court found that Pamela met her burden of proof for the purpose of the summary judgment motion. Summarizing Pamela's motion, the Bankruptcy Court identified the evidence in the record establishing that B & P consented or voluntarily agreed to have the funds deposited in the Arvest account. (*Id.* PageID.76-77.) The Bankruptcy Court noted William's declaration and the findings made in the resolution of the fraudulent transfer summary judgment motion. The Bankruptcy Court pointed out that Trustee's response to this argument did not contradict the conclusion that B & P voluntarily transferred the funds; rather Trustee's response was that B & P should not have transferred the funds. (*Id.* PageID.78–79.)

Bankruptcy Court concluded that Trustee could not prevail in a scenario where the conversion claim required a finding that the initial transfer, directed by William, constituted conversion. (*Id.* PageID.80.) Pamela was not involved in the decision to have the funds deposited in the Arvest account. (*Id.* PageID.75.) Because B & P agreed to have the funds deposited in the Arvest account, the initial movement of the funds, standing alone, could not constitute conversion. (*Id.* PageID.80.) And, because B & P agreed to have the funds deposited in the Arvest account, the movement of the funds to the Arvest account was not inconsistent with B & P's property interest in the money.

The Bankruptcy Court also concluded that Trustee could not prevail against Pamela in a scenario that required B & P to retain some property interest in the funds after the funds were deposited in the Arvest account. (*Id.* PageID.80-81.) The Bankruptcy Court relied on the prior ruling on the fraudulent transfer claim. In that ruling, the Bankruptcy Court found that the transfer of the funds to the Arvest account harmed B & P's creditors by leaving B & P with insufficient funds to pay its debts. (*Id.* PageID.79-81.) The transfer "rendered the Debtor insolvent, with nothing left to pay claims." (*Id.* PageID.81.) Because B & P was insolvent, it necessarily followed that B & P did not retain any property interest in the funds after the funds were deposited in the Arvest account. And, the Bankruptcy Court found that Trustee offered no evidence that B & P retained any property interest in the funds. (*Id.* PageID.83.)

The Court finds the record and the law supports the conclusion of the Bankruptcy Court. The act of depositing the funds in the Arvest account could not constitute conversion. B & P consented to have the funds deposited in the account and Pamela was not involved in

that decision. Therefore, Pamela could only be found liable for conversion for her use of the funds after they were placed in the Arvest account. The record supports the conclusion that B & P did not retain any interest in the funds after the money was placed in the Arvest account. In resolving the motion for summary judgment concerning the fraudulent transfer claim, the Bankruptcy Court concluded that B & P was undercapitalized after the funds were deposited in the Arvest account. In order to reach that conclusion, the Bankruptcy Court had to conclude that B & P did not retain any interest in the funds after money was deposited. That holding was not appealed.

Accordingly, Pamela's use of the money after it was deposited in the Arvest account did not constitute conversion. Because B & P did not retain any property interest in the funds, Pamela's use of the money was not "in denial of or inconsistent with" B & P's rights. *See Appletree Mktg.*, 779 N.W.2d at 244. In addition, Pamela obtained the money with B & P's consent and without the creation of a creditor-debtor relationship. *See Head*, 593 N.W.2d at 603.

C.

The Court next addresses the specific errors alleged by Trustee. Trustee first asserts that the record contains evidence that B & P retained some interest in the money after it was deposited in the Arvest account. This argument necessarily fails because of the Bankruptcy Court's prior ruling on the fraudulent transfer claim. The Bankruptcy Court previously found that B & P was undercapitalized after the proceeds of the sale of assets were placed in the Arvest account. To reach that conclusion, the Bankruptcy Court must necessarily have concluded that B & P did not retain any interest in the funds. If B & P did retain interest in

the funds, B & P could not be undercapitalized. Indeed, this is precisely what Trustee argued in the brief supporting the motion for the fraudulent transfer claim.[3] To the extent Trustee relies on the Bankruptcy Court's and the Sixth Circuit's rulings concerning Rule 12(b) motions, those rulings were based entirely on the pleadings, and do not address the situation where Trustee prevailed on the merits of one claim which was brought in the alternative to another claim.

Second, Trustee asserts that Pamela's fiduciary duty as an officer of the corporation provides a basis for the conversion claim. Trustee's argument assumes that Pamela obtained the funds as a fiduciary. (ECF No. 4 Trustee Brief at 28 PageID.2266.) This argument fails for the same reason. King Par or B & P did not retain any interest in the funds once the funds were deposited in the Arvest account. Thus, Pamela did not obtain or receive the funds as a fiduciary or as an agent of King Par.

Third, Trustee asserts the Bankruptcy Court erred in requiring that a conversion claim is a claim for the return of specific money. Michigan courts have held that a conversion requires the defendant to have an obligation to return specific money. *See, e.g., Dunn v.*

---

[3] In the brief supporting the motion for summary judgment on the fraudulent transfer claim, Trustee wrote "[t]here is no question in this case that the Debtor did not retain *any legal rights* in the corporate funds appropriated by the Bairds and transferred to their personal accounts elsewhere after arrival in their joint bank account at Arvest Bank." (ECF No. 6-6 PageID.2986) (emphasis added). Because Trustee advanced this argument, and prevailed on it in a prior ruling, judicial estoppel likely bars Trustee from now advancing contradictory arguments. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding."). In some opinions, the Sixth Circuit requires the party to take a position under oath for judicial estoppel to apply. *See Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Because the law is not clear whether an oath is required, the Court does not rely on judicial estoppel to resolve this matter.

*Bennett*, 846 N.W.2d 75, 81 (Mich. Ct. App. 2013); *Head*, 593 N.W.2d at 603; *Garras v. Bekiares*, 23 N.W.2d 239, 241-42 (Mich. 1946). In the relevant passage, the Bankruptcy Court was distinguishing property interests from contractual obligations. (Conversion Opinion PageID.82-83.) When read in context, the Bankruptcy Court held that, to the extent B & P retained any interest in the funds deposited into the Arvest account, B & P did not retain a property interest, as opposed to a contractual interest or a creditor's interest, such that it could make a demand for the specific money. Therefore, Pamela had no obligation to return any specific property, money in this case, for the purpose of a conversion claim. The Court finds no error.

Fourth, Trustee challenges whether the prior ruling on the fraudulent transfer claim now precludes B & P's claim for conversion. Trustee argues that the conversion claim was specifically preserved in the settlement agreement. This is not persuasive. The settlement agreement permitted the conversion claim to go forward; it was not an agreement between the parties as to the merits of the conversion claim. Trustee asserts that the fraudulent transfer claim and the conversion claim are not inconsistent because there was no recovery for the fraudulent transfer claim. Of course, the settlement reached by the parties obviated a need for Trustee to seek recovery on the fraudulent transfer claim. Trustee argues that it did not need to prove an absolute, unconditional transfer of the rights to the money to prevail on the fraudulent transfer claim. While this is an accurate statement of the law, it ignores the facts in this case which provided the basis for the prior ruling. B & P did not retain any interest in the funds once they were deposited in the Arvest account. Trustee identifies several cases where fraudulent transfer and conversion claims were raised. But, the facts in

those cases are different from the facts on which the fraudulent transfer in this case was successful.

Finally, Trustee asserts that the Sixth Circuit "effectively passed on the sufficiency of the proof supporting the Trustee's claims for conversion." (ECF No. 4 at 43 PageID.2281.) Trustee contends the pleadings setting forth the facts in support of the conversion claims were functionally quotes from different transcripts. But, the Sixth Circuit considered only whether the pleadings set forth a claim, and viewed those pleadings assuming they were true. That is not the standard for evaluating evidence supporting a motion for summary judgment. The Sixth Circuit did not consider whether factual findings, supporting other claims, undermined the pleadings setting forth the conversion claim.

IV.

The Bankruptcy Court's decision is **AFFIRMED**. Trustee has not demonstrated an error in the factual findings or the legal conclusions in the Bankruptcy Court's opinion. Trustee initially argued and ultimately persuaded the Bankruptcy Court that B & P retained no interest, whatsoever, in the funds that were deposited in the Baird's account in the Arvest Bank. That finding was necessary to the Bankruptcy Court's conclusion that the B & P was insufficiently capitalized for the fraudulent transfer claim. Now, to succeed on the conversion claim, Trustee argues that B & P retained some interest in the funds after they were deposited in the Arvest account. The Bankruptcy Court properly rejected Trustee's motion and granted Pamela Baird's motion concerning the conversion claims. **IT IS SO ORDERED.**

Date:  January 19, 2018                 /s/ Paul L. Maloney
                                                                  Paul L. Maloney
                                                                  United States District Judge